1  HERMAN H. FITZGERALD, #33131
   CHRISTINE C. FITZGERALD, #131531
2  LAW OFFICES OF HERMAN H. FITZGERALD
   A Professional Corporation
3  345 Lorton Avenue, Suite 302
   Burlingame, CA 94010
4  Telephone: (650) 348-5195
5  Facsimile: (650) 348-3518
   *fitzgeraldlaw@sbcglobal.net*
6

7  DAVID E. SCHRICKER, #36534
   LAW OFFICES OF DAVID E. SCHRICKER
8  20370 Town Center Lane, Suite 100
   Cupertino, CA 95014
9  Phone:   (408) 517-9923
   Facsimile: (408) 252-5906
10 *dschricker@schrickerlaw.com*
11

**FILED**

**JUN 2 5 2008**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

☐ **ORIGINAL**

*Exempt From Filing Fees Pursuant*
*To Government Code section 6310*

12 Attorneys For Plaintiff
   MONTARA WATER AND SANITARY DISTRICT
13

14              UNITED STATES DISTRICT COURT

15    NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

16

17 MONTARA WATER AND SANITARY          )   No. CV 08 2814 BZ
   DISTRICT, a public agency,          )
18                                      )   **NOTICE REGARDING EXHIBIT**
                                        )   **ATTACHMENT**
19           Plaintiff,                 )
                                        )
20 v.                                   )        Hearing:
                                        )
21 COUNTY OF SAN MATEO, a political     )   Date: September 3, 2008
   subdivision of the State of California; and Does )   Time: 10:00 a.m.
22 1 to 20, inclusive,                  )   Dept.: Bernard Zimmerman
                                        )
23                                      )
           Defendants.                  )
24 _____ )
                                        )
25 THE UNITED STATES OF AMERICA,        )
                                        )
26                                      )
           Intervenor.                  )
27 _____ )

28

                            1

1    Exhibits A-G which are attachments to Plaintiff Montara Water and Sanitary District's

2    NOTICE OF MOTION AND MOTION TO REMAND REMOVED ACTION TO SUPERIOR

3    COURT OF CALIFORNIA, COUNTY OF SANTA CLARA; MEMORANDUM OF POINTS

4    AND AUTHORITIES is in paper form only and are being maintained in the case file in the Clerk's

5    office.

6

7    Reason for manual filing: the exhibits are too large for e-filing.

8    Dated: June 24, 2008.                    LAW OFFICES OF HERMAN H. FITZGERALD
                                              A PROFESSIONAL CORPORATION
9

10

11   By:
                                              HERMAN H. FITZGERALD
12                                            Attorneys for Plaintiff

13

14

15   NoticeReExhibit.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| | |
|---|---|
| **1** | HERMAN H. FITZGERALD, #33131 |
| **2** | CHRISTINE C. FITZGERALD, #131531 |
| | LAW OFFICES OF HERMAN H. FITZGERALD |

HERMAN H. FITZGERALD, #33131
CHRISTINE C. FITZGERALD, #131531
LAW OFFICES OF HERMAN H. FITZGERALD
A Professional Corporation
345 Lorton Avenue, Suite 302
Burlingame, CA 94010
Telephone: (650) 348-5195
Facsimile: (650) 348-351
*fitzgeraldlaw@sbcglobal.net*

ENDO ·· ···· ·· D
SAN ·· ·· ·· COUNTY

MAY 1 7 2007

Clerk of the Superior Court
By M. Javillon Jr
DEPUTY CLERK

DAVID E. SCHRICKER, #36534
LAW OFFICES OF DAVID E. SCHRICKER
20370 Town Center Lane
Cupertino, CA 95014
Phone:    (408) 517-9923
Facsimile: (408) 252-5906
*dschricker@schrickerlaw.com*

*Exempt From Filing Fees Pursuant
To Government Code section 6310*

Attorneys For Plaintiff
MONTARA WATER & SANITARY DISTRICT

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

CIVIL UNLIMITED JURISDICTION

| | |
|---|---|
| MONTARA WATER AND SANITARY DISTRICT, a public body,<br><br>       Plaintiff,<br><br>v.<br><br>COUNTY OF SAN MATEO, a political subdivision of the State of California; and DOES 1 to 20, inclusive,<br><br>       Defendants.<br>_____ | No. CIV 4 6 2 · · 8<br><br>**COMPLAINT IN EMINENT DOMAIN**<br><br>(CCP §§ 1250.310; 1240.110; 1240.125; 1240.510; 1240.610; 1240.650; 1240.660)<br><br>APN: 037-292-030 (portion) |

Plaintiff, MONTARA WATER AND SANITARY DISTRICT, complains of Defendants, and for cause of action alleges:

    1.    Plaintiff, the MONTARA SANITARY DISTRICT ("Plaintiff" or "Montara"),

is now, and at all times relevant hereto, a sanitary district established pursuant to the Sanitary

1

EXHIBIT A

District Act of 1923, Health & Safety Code §§ 6400, et. seq., a public agency providing water and sanitary service to the unincorporated communities of Moss Beach and Montara, including surrounding communities in the County of San Mateo, State of California, and is by law vested with the authority to exercise the power of eminent domain to acquire property for water purposes pursuant to the Eminent Domain Law, Code of Civil Procedure ("CCP") §§ 1230.010, et. seq., of the State of California, and is empowered with all the additional powers of a county water district pursuant to Health & Safety Code § 6512.7 to do any act necessary to furnish sufficient water for present or future beneficial use, including the power to acquire, operate, finance, and control water rights, works, real property rights and privileges, useful or necessary to convey, supply, store or make use of water for any useful purpose, all in the same manner as county water districts formed under the County Water District Law (Division 12, commencing with Section 30000, of the Water Code),

2.    Plaintiff owns and operates a public drinking water system which, *inter alia*, provides potable water to residents and businesses in and around Montara, California, including water to Defendant County of San Mateo at its *Half Moon Bay Municipal Airport* ("Water System"). Montara's Water System includes three (3) drinking water production ground wells known as the "Airport Wells" which draw from one or more groundwater aquifers in the San Vicente/Denniston Creek Sub-Basin. The Airport Wells together supply approximately sixty-percent (60%) of the potable water delivered by the Water System. Among other things, Plaintiff's Water System includes the right of Plaintiff to appropriate and use groundwater for drinking water supplies from the Airport Wells.

3.    The Airport Wells and water rights have been owned and operated by Plaintiff (and its predecessors) at the Half Moon Bay Airport since about 1943, prior to the transfer of the airport property to the Defendant County of San Mateo by the Federal government in 1948. Plaintiff has a *Revocable Encroachment Permit* (REP) from the Defendant to operate and maintain the Airport Wells on County land and the operation of the Airport Wells does not interfere with airport operations; moreover, the Federal Aviation Administration ("FAA") has permitted the use of the

2

or lease long-term the land upon which the wells sit from the County so that it can receive funding from the State and comply with Plaintiff's operating permit issued by the State of California, which requires fee ownership of the land upon which the Airport Wells sit.

3.    Because Plaintiff has continuously owned, operated and maintained the Airport Wells, including the water rights, and because the wells provide an essential and major part of the community's water supply, it is necessary that Plaintiff acquire the real property, access to the real property, easements and water rights, if any, and any above or below surface right to the water extracted from the wells, in and to lands upon which Airport Wells are located at the County of San Mateo's Half Moon Bay Municipal Airport ("Airport Wells Sites" or "subject property"). The acquisition, however, does not include any interest of the Federal Government and the acquisition would be subject to the interests of the Federal Government.

4.    The subject property is being acquired for a compatible use under CCP § 1240.510 in that Montara's use of the subject property will not interfere with or impair the continued public use as it now exists or may reasonably be expected to exist in the future, or, in the alternative, for a more necessary public use under CCP §§ 1240.610 and 1240.650 in that Montara's use of the subject property is a more necessary public use than the use to which the subject property is appropriated or might be appropriated.

5.    Plaintiff is authorized to exercise the power of eminent domain for the purposes for which the herein described property is being acquired by virtue of Health & Safety Code § 6512.7, Water Code §§ 31001, 31020, 31021, 31022, 31040, 31041, 31042, and 31047, and Code of Civil Procedure §§ 1230.020, 1240.010, 1240.020, 1240.110, 1240.120(a), 1240.125, 1240.510 1240.610 and 1240.650.

6.    The public use for which the herein described subject property is being acquired is so that Plaintiff can maintain an assured and stable property interest in the Airport Wells and the water rights therein which is absolutely necessary for the continual operation, improvement and maintenance of the Airport Wells and Plaintiff's Water System as a whole, which use by Plaintiff

a more necessary use than that by Defendant, and is a use authorized by law; the taking by plaintiff of all right, title and interest in and to said subject property for the purposes herein set forth is necessary to such use.

7.    Prior to the commencement of this action, and after due notice and opportunity to be heard pursuant to Code of Civil Procedure § 1245.235, at a meeting of the Board of the Montara Water & Sanitary District, duly and regularly convened at Montara, California on April 19, 2007 said Board duly and regularly passed and adopted, by a vote of not less than two-thirds (2/3's), Resolution No.1387 stating and determining that public interest and necessity require the acquisition of the lands, easements, property rights, water rights, if any, of Defendant as set forth in said Resolution and as more particularly described in the exhibits attached hereto, for the continual operation of the Airport Wells and the Water System; (b) the proposed project, i.e., acquisition and continual operation by plaintiff, is planned and located in the manner that will be most compatible with the greatest public good and the least private injury; (c) the property sought to be acquired is necessary for the project; (d) the offer required by Section 7267.2 of the Government Code has been made to the owner or owners of record; and (e) that the use to be made by Plaintiff is a more necessary public use than the existing use by the Defendant; the Resolution is attached hereto as Exhibit A and incorporated by this reference in this paragraph as though set forth at length herein.

8.    Plaintiff seeks to condemn by this proceeding the real property interests described in said Resolution; the real property involved herein is a portion of  San Mateo Assessor Parcel Number 037-292-030, more particularly designated and described in Exhibit B; the water system, the real property and interests in the real property sought to be acquired herein are more fully described and depicted on Exhibit A, B, and C, attached hereto and incorporated in this paragraph as though set forth at length herein.

9.    The location of the subject property sought to be acquired herein and its relation to the project, insofar as practicable, is illustrated on the map attached hereto as Exhibit C and incorporated in this paragraph as though set forth at length herein.

10.    As much of the property described herein lies within the boundaries of streets and

4

COMPLAINT IN EMINENT DOMAIN

1  highways is subject to an easement or prescriptive right of the public for use for such purpose.

2      11.    The names and capacities of all owners of and claimants to the said water system

3  sought to be condemned herein, insofar as known to the Plaintiff, are set forth below.

4      12.    Plaintiff has set opposite the name of said Defendants, for the convenience of the

5  Court and parties, and not as allegations to which Plaintiff intends to be bound, a statement of his,

6  her or their respective interest or claim of interest in said parcels.

7  NAME OF DEFENDANTS                                    INTEREST

8  County of San Mateo                                   Owner

9  Does One through Doe Twenty                           Unknown

10      13.    Plaintiff is informed and believes and on such information and belief alleges that

11  Defendants DOE ONE through DOE TWENTY, inclusive, have, or claim to have, an interest in said

12  parcels of land, the exact nature of which is unknown to Plaintiff. The true names or capacities,

13  whether individual, corporate, associate, or otherwise of Defendants DOE ONE through DOE

14  TWENTY, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names,

15  and will ask leave to amend this complaint to show their true names and capacities and state of

16  incorporation when the same have been ascertained.

17      14.    The subject property is subject to liens for ad valorem taxes which must be paid out

18  of the just compensation awarded herein pursuant to Section 5083 of the Revenue and Taxation

19  Code of the State of California.

20      WHEREFORE, plaintiff prays judgment as follows as follows:

21      1.    That the subject property described in Exhibits A, B and C hereof, be condemned to

22  Plaintiff's use for the purposes set forth in the aforesaid Resolution of the Board of the Montara

23  Water & Sanitary District;

24      2.    That the Defendants be required to set forth the nature of their right, title, interest

25  and claim in and to the subject property sought to be condemned and that the same be determined

26  by this Court and said subject property be condemned to the Plaintiff's use;

27      3.    That just compensation for such taking thereto be ascertained and assessed;

28

5

COMPLAINT IN EMINENT DOMAIN

 

4.    That the reasonable value of all liens and encumbrances against the subject property sought to be condemned be ascertained, deducted from said judgment, and be ordered paid to the persons thereunto entitled, if any; and

5.    For such other and further relief as is appropriate under the facts and law herein.

Dated: May 16, 2007.

LAW OFFICES OF HERMAN H. FITZGERALD
A PROFESSIONAL CORPORATION

By: _____
CHRISTINE C. FITZGERALD
AttorneyS for Plaintiff

Complaint.Final

COMPLAINT IN EMINENT DOMAIN

1  HERMAN H. FITZGERALD, #33131
   CHRISTINE C. FITZGERALD, #131531
2  LAW OFFICES OF HERMAN H. FITZGERALD
   A Professional Corporation
3  345 Lorton Avenue, Suite 302
   Burlingame, CA 94010
4  Telephone: (650) 348-5195
   Facsimile: (650) 348-3518
5  *fitzgeraldlaw@sbcglobal.net*

6  DAVID E. SCHRICKER, #36534
   LAW OFFICES OF DAVID E. SCHRICKER
7  20370 Town Center Lane
   Cupertino, CA 95014
8  Phone:    (408) 517-9923          ***Exempt From Filing Fees Pursuant***
   Facsimile: (408) 252-5906          ***To Government Code section 6310***
9  *dschricker@schrickerlaw.com*

10 Attorneys For Plaintiff
   MONTARA WATER AND SANITARY DISTRICT
11

12
               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
             IN AND FOR THE COUNTY OF SANTA CLARA - CIVIL UNLIMITED
14

15

16 MONTARA WATER AND SANITARY          )   No. 1-07-CV-088793
   DISTRICT, a public agency           )
17                                      )   [proposed] **ORDER FOR**
              Plaintiff,               )   **POSSESSION IN EMINENT**
18                                      )   **DOMAIN ACTION**
   v.                                   )
19                                      )   **CCP § 1255.460**
                                        )
20 COUNTY OF SAN MATEO, a political     )
   subdivision of the State of California; and Does 1 )
21 to 20, inclusive,                    )
                                        )
22            Defendants.              )
                                        )
23 _____ )

24      Upon the Complaint of Plaintiff on file herein to acquire by eminent domain the real

25 property which is the subject of this action ("subject property"), and upon *Motion for Order for*

26 *Possession in Eminent Domain Action* filed by Plaintiff MONTARA WATER AND SANITARY

27 DISTRICT pursuant to Code of Civil Procedure section 1255.410, and Defendant COUNTY OF

28                                                                    EXHIBIT B
                                            1
   _____
   [proposed] ORDER FOR POSSESSION IN EMINENT DOMAIN ACTION

1   SAN MATEO filing its *Opposition to Plaintiff's Motion for Order for Possession,* said Motion

2   having regularly come on for hearing on December 13, 2007 in Department 16 of this Court, the

3   Honorable Kevin E. McKenney presiding, and all oral argument as was presented at hearing, and

4   good cause appearing, the Court finds and determines:

5        IT APPEARS and the Court determines that Plaintiff is entitled to take the property which is

6   the subject of this action as fully described in the *Complaint in Eminent Domain* on file in this

7   action ("subject property") by eminent domain;

8        IT FURTHER APPEARS and the Court determines that Plaintiff has heretofore deposited

9   the probable just compensation to be awarded of $5,929 with the State Treasurer pursuant to

10  section 1255.010 of the Code of Civil Procedure;

11       IT FURTHER APPEARS and the Court determines that there is an overriding need for the

12  Plaintiff to possess the subject property prior to the issuance of final judgment in this proceeding

13  and that plaintiff will suffer a substantial hardship if the motion for possession is denied or limited;

14       IT FURTHER APPEARS and the Court determines that the hardship plaintiff will suffer if

15  possession is denied or limited outweighs any hardship on the defendant or occupant that would be

16  caused by the granting of an order for possession; and the Court so finding;

17       IT IS HEREBY ORDERED AND DETERMINED that Plaintiff's deposit of $5,929 is

18  reasonably adequate to secure to the owners of the subject property the probable just compensation

19  for such taking and any damage incident thereto;

20       IT IS FURTHER ORDERED that Plaintiff is authorized and empowered to enter upon and

21  take possession and use of the subject property described in the Complaint herein, and Plaintiff is

22  authorized and empowered to remove therefrom any and all persons, obstacles, improvements or

23  structures of every kind or nature thereon situated, and to fully possess and use the subject property

24  from and after the date of issuance of this Order for Possession, or as of December 31, 2007,

25  whichever is earlier.

26  Dated: __December 19__, 2007.

    JUDGE OF THE SUPERIOR COURT

27  Order Poss/SC

    KEVIN E. McKENNEY

28

                                    2

    _____
    [proposed] ORDER FOR POSSESSION IN EMINENT DOMAIN ACTION

1  HERMAN H. FITZGERALD, #33131
   CHRISTINE C. FITZGERALD, #131531
2  LAW OFFICES OF HERMAN H. FITZGERALD
   A Professional Corporation
3  345 Lorton Avenue, Suite 302
4  Burlingame, CA 94010
   Telephone: (650) 348-5195
5  Facsimile: (650) 348-3518
   *fitzgeraldlaw@sbcglobal.net*
6

7  DAVID E. SCHRICKER, #36534
   LAW OFFICES OF DAVID E. SCHRICKER
8  20370 Town Center Lane, Suite 100
   Cupertino, CA 95014
9  Phone:    (408) 517-9923
   Facsimile: (408) 252-5906
10 *dschricker@schrickerlaw.com*        ***Exempt From Filing Fees Pursuant***
                                        ***To Government Code section 6310***
11

12 Attorneys For Plaintiff
   MONTARA WATER AND SANITARY DISTRICT
13

14                 UNITED STATES DISTRICT COURT

15       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

16

17 MONTARA WATER AND SANITARY          )   No. CV 08214 BZ
   DISTRICT, a public agency,          )
18                                      )
                                        )
19         Plaintiff,                   )   **DECLARATION OF GEORGE F.**
                                        )   **IRVING IN SUPPORT OF PLAINTIFF'S**
20 v.                                   )   **MOTION TO REMAND REMOVED**
                                        )   **ACTION TO SUPERIOR COURT OF**
21 COUNTY OF SAN MATEO, a political     )   **CALIFORNIA, COUNTY OF SANTA**
   subdivision of the State of California; and Does  )  **CLARA**
22 1 to 20, inclusive,                  )
                                        )
23                                      )
           Defendants.                  )   Date:
24 _____  )   Time:
                                        )   Dept.:
25 THE UNITED STATES OF AMERICA,        )
                                        )
26         Intervenor.                  )   Trial Date: None Set
                                        )
27 _____  )

28                                              EXHIBIT C

                                        1

   DEC. OF G. IRVING IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO SUP. CT.

1    I, GEORGE F. IRVING, declare that:

2    I am the District Manager for the MONTARA WATER AND SANITARY DISTRICT, in the

3    community of Montara, County of San Mateo, State of California; I have personal knowledge of the

4    facts set forth in this Declaration all of which I believe to be true, other than those matters set forth

5    on information and belief which I verily believe to be true, and if called upon, I would be competent

6

7    to testify as a witness thereto;

8    Plaintiff is the Montara Water and Sanitary District ("MWSD"), a sanitary district authorized

9    under California law to exercise the powers of a county water district to provide water and sanitary

10   service to the unincorporated communities of Moss Beach and Montara, including surrounding

11
     communities in the County of San Mateo, State of California. In that capacity, MWSD owns and
12
     operates a public drinking water system which, among other things, provides potable water to
13
14   residents and businesses in and around Montara, California, including water to Defendant County of

15   San Mateo at its *Half Moon Bay Municipal Airport* ("Water System"). As part of its Water System,

16   MWSD operates (3) drinking water production ground wells known as the "Airport Wells" which,

17   together, supply approximately sixty-percent (60%) of the potable water delivered by the Water

18   System.

19
20   Drinking water wells and water rights have been owned and operated by MWSD (and its

21   predecessors) at the Half Moon Bay Airport since about 1943, prior to the transfer of the airport

22   property to the County of San Mateo by the Federal government in 1947. MWSD had a *Revocable*

23   *Encroachment Permit* (REP) issued by the Defendant County to operate and maintain the Airport

24   Wells on County land; the operation of the Airport Wells does not, and has never interfered with

25   airport operations; moreover, the Federal Aviation Administration ("FAA") has permitted the use of

26   the Airport Wells and recognizes their use as proper under the REP. The REP is not a lease, but a
27

28                                                    2

DECLARATION OF GEORGE F. IRVING IN SUPPORT OF MTN. SUMMARY ADJUDICATION ISSUES

1    monthly arrangement by which MWSD could be expelled by the County from the airport at any

2    time for any reason.

3         Currently, the District lacks about 1.2 million gallons of water storage and constantly faces a

4    potential crisis resulting from breaks in the water mains and water service lines going to private

5    homes. If there are several water leaks or breaks in this water distribution system at one time, the

6    lack of sufficient water storage means that the water tanks could drain during the night before

7

8    MWSD became aware of the problem and/or could locate the source of the leaks. MWSD would

9    have insufficient water in the tanks to provide drinking water or to put out a fire. The shortage of

10   water supply means that it may take a day or two to fill the tanks back up to the required level. This

11   is because the limited gallons per minute that can be pumped into the tanks means the tanks fill up

12

13   slowly. If this happens during the summer months, when the demand for water is already high, then

14   it takes even longer to fill the tanks up. The bottom line is that the District is only a couple of leaks

15   away from disaster. If we do not have sufficient water at the time a fire occurs there may not be

16   enough water to put out a fire. This is a rural community with a lot of trees and undergrowth so in

17   addition to dwelling fires there is also danger of forest fires which require large volumes of water.

18        In addition, the District has been under a water moratorium since the mid-1970's because the

19   water it does have, even with the airport supply, is not sufficient for the fire flow and drinking needs

20

21   of this community.  This makes the airport supply all the more vital. MWSD is looking for

22   additional supplies, but such an endeavor takes years and can cost millions when the permitting and

23   environmental studies are included in the total cost.

24        In order to rectify the District's water problem, and in an effort to improve its water system to

25   meet current demand, MWSD submitted an application to the State of California for a Department

26   of Health Services low-interest loan (2.5% for 20 years) to build one new 1 million gallon tank and

27

28

3

DECLARATION OF GEORGE F. IRVING IN SUPPORT OF MTN./SUMMARY ADJUDICATION ISSUES

1    replace an existing 1940s vintage 100,000 gallon tank with a new 200,000 gallon tank. In addition,

2    the District is being required by the State to upgrade treatment of the water supply at the airport

3    which is contaminated with nitrates, TCP, manganese and other contaminants. The State wants a

4    centralized water treatment plant to address all of those items. A State loan for that improvement

5

6    has also been requested.

7         The State has accepted MWSD's application with the condition that the money will not be

8    loaned if we do not have an ownership interest on the Airport Well sites. The State requirement is

9    so that there is sufficient revenue stream and collateral to insure repayment of the loan, i.e., it

10   would be folly for the State to loan the money to an agency which has no control over 60% of its

11   water supply—and therefore 60% of its revenue needed to repay the loans. MWSD has made the
12
13   State aware of the pending eminent domain action and the order of possession was sufficient to meet

14   the condition for funding at this time.   Attached to this Declaration and marked Exhibit "A" is a

15   true and correct copy of the State's September 28, 2007 letter and *Notice of Acceptance of*

16   *Application - Terms and Conditions* ("Notice") to the District containing the following term at page

17   2 of the Notice, under the heading CDPH Requirements: " 3. Montara Water and Sanitary District

18   shall acquire ownership of the airport well sites and associated water rights no later than December
19
20   31, 2007. ..."

21        Because Plaintiff has continuously owned, operated and maintained the Airport Wells,

22   including the water rights, and because the wells provide an essential and major part of the

23   community's water supply, it is essential that Plaintiff acquire the real property, access to the real

24   property, easements and water rights, if any, and any above or below surface right to the water

25   extracted from the wells, in and to lands upon which Airport Wells are located at the County of San

26   Mateo's Half Moon Bay Municipal Airport.
27
     //
28

4

1     The following arguments raised by the County have no merit for the reasons set forth below.

2     **— the District has other reasonable alternatives for wells....**

3     So far as we know the airport aquifer is unique on the coastal area between Half Moon Bay
4     (HMB) and Montara. It is the largest defined aquifer in this area. There are no better alternatives
5     for a large area with sufficient unconsolidated rock and sand to hold groundwater. This aquifer is
6     like a bowl—it has more water in the center but it rapidly decreases the further you get from the
7     center. We inherited a piece of property off Oak Street just north of the airport. It was purchased by
8     Citizens Utilities in the 1980s and they only got about 10 gpm—not enough for a public well. We
9     contacted the owners of the land across Highway 1 where there is a large farming operation. The
10    co-owner of the parcel is the California Coastal Conservancy and they would not even let us drill a
11    test well or gather data from existing wells on their property. They said in writing that their policy is
12    firm and well established—they do not allow wells on their properties which will serve
13    people. Their objective is to use their land for farming and other passive open space purposes—not
14    to serve or sustain populations whether existing or new. The property closer to the ocean is already
15    used by the mobile home park and they have not only nitrate contamination but TCE contamination
16    probably from the industrial property nearby.

17    As for other well locations in other areas. Our hydrologist selected 12 well sites in the
18    Montara area and after over two years of testing and evaluation we found only one well, the Alta
19    Vista Well, that had sufficient production to justify development as a public well. Unfortunately
20    this is a well in rock so unlike the airport aquifer we cannot tell how much water it has. It could run
21    dry tomorrow or it could prove to be a long-term supply. In rock wells we are drawing water from
22    cracks and fissures in the earth and cannot determine how much water is there or where it is coming
23    from. In the case of the airport we know the area, the depth of the sand and gravel that holds the
24    water so hydrologists can estimate the total available water and can monitor it so that they know
25    when its running low. This is far preferable to a "blind" rock well.

26    **—the well sites are inconsistent with aviation use....**

27    The District or its predecessors have had wells in this area of the airport since 1943 which is

28
                                                    5

1    before the County received the airport. There has never been a documented problem that I am aware

2    of in which the wells conflicted with the airport use. In fact, the wells are closer to the Highway 1

3    than to the flight strip. The airport has leases with many different groups, companies or individuals

4    for land and/or buildings on the airport including:

5        Lease agreement with a farmer to cultivate over 100 acres of their land closer to the flight strip

6    than our wells.

7        Agreement with a youth group to hold field hockey games on a field built closer to the flight

8    strip than our wells.

9        Allows public parking of vehicles closer to the flight strip for events such as The Mavericks

10   surfing event.

11       Allows the Sheriff's Department to hold driver training closer to the airstrip than District

12   wells.

13       Allows a major tourist event (Dream Machines) every year in which the public parks around

14   the flight strip and walks onto the flight strip to see various planes and items of interest.

15       Allowed high towers to be installed as windmills closer to the airstrip than our wells. These

16   windmills failed and have been converted to cellular towers on long-term leases to cellular

17   companies.

18

19       There is clear precedent by the FAA of allowing uses on airport which are classified as non-

20   aeronautical. The following summarizes what I understand to be some FAA recommended

21   approvals (and one DOD) of such uses just since August 1, 2007 all of which are in airports much

22   busier than the HMB Airport:

23       November 8, 2007 (Volume 72, Number 216)|, Public Notice for Waiver of Aeronautical

24   Land-Use Assurance, James M. Cox Dayton International Airport, Dayton, OH

25

26       November 5, 2007 (Volume 72, Number 213)|, Department of the Navy, Notice of Surplus

27   Property at Navy Base Realignment and Closure 1993 Installation: Naval Air Station Alameda,

28

6

Alameda, CA

October 29, 2007 (Volume 72, Number 208)|,Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at Seattle Tacoma International Airport, Seattle, WA

October 29, 2007 (Volume 72, Number 208)|,Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at Klamath Falls Airport, Klamath Falls, OR

November 8, 2007 (Volume 72, Number 216)|, Federal Aviation Administration, Public Notice for Waiver of Aeronautical Land-Use Assurance, James M. Cox Dayton International Airport, Dayton, OH

October 11, 2007 (Volume 72, Number 196)|, Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at Muskogee-Davis Field Municipal Airport, Muskogee, OK

October 11, 2007 (Volume 72, Number 196)|,Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at the Hondo Municipal Airport, Hondo, TX

October 12, 2007 (Volume 72, Number 197)|, Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at Lafayette Regional Airport, Lafayette, LA

October 12, 2007 (Volume 72, Number 197)|, Federal Aviation Administration, Request for Public Comment, Clinton County Airport, Plattsburgh, NY

September 28, 2007 (Volume 72, Number 188)|, Federal Aviation Administration, Notice of Intent To Rule on a Request To Release Airport Property at Arlington Municipal Airport, Arlington, WA

September 28, 2007 (Volume 72, Number 188)|, Federal Aviation Administration, Public Notice for a Change in Use of Aeronautical Property at Manchester Airport, Manchester, NH

7

September 21, 2007 (Volume 72, Number 183)], Federal Aviation Administration, Notice of Intent To Release Certain Properties From All Terms, Conditions, Reservations and Restrictions of a Quitclaim Deed Agreement Between Miami-Dade County and the Federal Aviation Administration for the Opa Locka Executive Airport, Opa-Locka, FL

September 20, 2007 (Volume 72, Number 182)], Federal Aviation Administration, Public Notice for Waiver of Aeronautical Land-Use Assurance; Pellston Regional Airport; Pellston, MI

September 18, 2007 (Volume 72, Number 180)], Federal Aviation Administration, Public Notice of Intent To Rule on Request To Release Airport Property at Dallas/Fort Worth International Airport, Texas

September 12, 2007 (Volume 72, Number 176)], Federal Aviation Administration, Public Notice for Waiver of Aeronautical Land-Use Assurance; Outagamie County Airport; Appleton, WI

September 6, 2007 (Volume 72, Number 172)], Federal Aviation Administration, Notice of Intent To Rule on Request To Release Airport Property at Oceano Airport, Oceano, CA

August 23, 2007 (Volume 72, Number 163)], Federal Aviation Administration, Public Notice for a Change in Use of Aeronautical Property at Sanford Regional Airport, Sanford, ME

August 22, 2007 (Volume 72, Number 162)], Federal Aviation Administration, Notice Before Waiver With Respect to Land at Lonesome Pine Airport, Wise, VA

August 13, 2007 (Volume 72, Number 155)], Federal Aviation Administration, Notice Before Waiver With Respect to Land at Leesburg Executive Airport, Leesburg, VA

August 2, 2007 (Volume 72, Number 148)], Federal Aviation Administration, Notice of Intent To Release Certain Properties From All Terms, Conditions, Reservations and Restrictions of a Quitclaim Deed Agreement Between the City of Orlando and the Federal Aviation Administration for the Orlando Executive Airport, Orlando, FL

8

DECLARATION OF GEORGE F. IRVING IN SUPPORT OF MTN./SUMMARY ADJUDICATION ISSUES

1  barrier to the County.  They have leased out much more of their land to others.

2      —**Threaten airport security...**

3  The airport leases land to youth hockey, public events in which everyone is encouraged to

4  attend such as the Dream Machines and Mavericks events compared with District employees who

5  are State certified operators authorized to work on a public water system in clearly marked

6  government trucks under the authority and supervision of a local government.

7

8      —**Render the County ineligible for future and existing FAA grants...**

9  The list above testifies to the fallacy of this claim.  There are about 20 airports who have been

10  authorized by FAA in the last few months to authorize airport property to be purchased or leased to

11  other government agencies by airports far larger and with more air traffic than the HMB Airport--

12  with no loss in grants.

13

14      —**Wells are incompatible with existing airport use...**

15  This has been addressed previously and is clearly not the case.  District wells have been on the

16  airport since its inception and with no documented problems to the airport operations.  The airport

17  allows other users closer to the flight line with other agencies with non-airport uses such as youth

18  field hockey, public events, driver training, vehicle storage, farming and cellular antennas.

19      I declare under penalty of perjury that the foregoing is true and correct.

20  Dated:  June ___, 2008

21

22

23                              GEORGE F. IRVING
                                DISTRICT MANAGER

24  Dec.George Irving.Remand.doc

25

26

27

28



S    of California—Health and Human 〜ces Agency

# California Department of Public Health



MARK B HORTON, MD, MSPH
Director

ARNOLD SCHWARZENEGGER
Governor

RECEIVED
OCT 0 5 2007
BY:

September 28, 2007

Mr. George F. Irving, District Manager
Montara Water and Sanitary District
8888 Cabrillo Highway
Montara, California  94037

**SDWSRF Project Funding for Montara Water and Sanitary District, Project
No. 4110010-024**

Dear Mr. Irving:

Your application for funding under the Safe Drinking Water State Revolving Fund
(SDWSRF) has been reviewed by the California Department of Public Health (CDPH)
and its agent, Department of Water Resources (DWR).  We have determined that
Project No. 4110010-024, as proposed by the Montara Water and Sanitary District, is
eligible for a construction loan in the amount of $1,217,700.  It is our understanding that
the total project is estimated to cost $1,514,100 and that the difference will be funded by
the Montara Water and Sanitary District.  The proposed funding is provided in part from
a Federal Capitalization Grant for Drinking Water State Revolving Fund (California)
CFDA number 66.468.

This letter serves as our Notice of Acceptance of Application.  Funds in the amount of
$1,217,700 have been reserved for this project provided the terms and conditions as set
forth herein are met, subject to availability of funds.  In order to maintain this
reservation of funds in the SDWSRF account for your project, it is essential that
you sign the attached "MONTARA WATER AND SANITARY DISTRICT, Project No.
4110010-024 SAFE DRINKING WATER STATE REVOLVING FUND NOTICE OF
ACCEPTANCE OF APPLICATION TERMS AND CONDITIONS" at the space
provided and return it within 60 days.

The funding agreement when issued and executed will provide for a $1,217,700 loan to
be repaid over 20 years at a 2.2836 percent interest rate.  Once the Montara Water and
Sanitary District begins drawing loan funds, CDPH will invoice you semiannually during
construction for interest accrued on funds disbursed.  (Section 116761.65 of the Health
and Safety Code prohibits deferral of interest on loans.)  Your semiannual principal and
interest payments will be approximately $38,092.19 and will normally begin after project
completion.  An accumulation of approximately $3,809.21 semiannually during the first

Division of Drinking Water and Environmental Management
P.O. Box 997377, MS 7418, 1616 Capitol Avenue, 2nd Floor, Sacramento, CA  95899-7377
(916) 449-5600 TDD (916) 449-5592 Fax (916) 449-5655
Internet Address:  www.cdph.ca.gov

**EXHIBIT A.**

Mr. George F. Irving
Page 2
September 28, 2007

10 years of the loan repayment period is required in order to build a loan repayment reserve fund equal to two semiannual payments.

Funding is contingent upon your **timely** compliance with all terms and conditions of this Notice of Acceptance of Application, including those set forth in the "Montara Water and Sanitary District, Project No. 4110010-024 SAFE DRINKING WATER STATE REVOLVING FUND NOTICE OF ACCEPTANCE OF APPLICATION TERMS AND CONDITIONS" attached hereto and incorporated herein by this reference. Compliance shall be determined at the sole discretion of CDPH or its authorized representative.

**This Notice of Acceptance of Application is not an authorization to begin construction. Unless prior written approval from CDPH is received, initiation of construction of this project prior to the execution of a funding agreement may result in this project being ineligible for financing from the SDWSRF. Therefore, if you plan to start construction early, you should immediately contact your District Office of CDPH.**

In order to maintain the reservation of funds in the SDWSRF account for your project, you must sign the attached "Montara Water and Sanitary District, Project No. 4110010-024 SAFE DRINKING WATER STATE REVOLVING FUND NOTICE OF ACCEPTANCE OF APPLICATION TERMS AND CONDITIONS" at the space provided **and return it within 60 days of receipt of this Notice of Acceptance of Application. We have provided two originals for your signature. Please sign both and return one full document including this cover letter to:**

> Department of Water Resources
> Safe Drinking Water Office
> Attention: Vanessa Southward
> 1416 Ninth Street, Room 816
> Post Office Box 942836
> Sacramento, California 94236-0001

Your signature will indicate your acceptance of the terms and conditions and your intention to proceed with the project. It does not constitute any obligation on your part to enter into the loan funding agreement. **Failure to sign and return the attachment to this Notice of Acceptance of Application within the time period will result in the withdrawal of the Notice and the bypassing of your project.**

Mr. George F. Irving
Page 3
September 28, 2007

The State commends the Montara Water and Sanitary District for taking steps to
enhance the provision and protection of the drinking water supplied to your consumers.
If you have any questions regarding this Notice, please contact Vanessa Southward,
DWR Associate Analyst, at (916) 653-4763 or by e-mail at vanessa@water.ca.gov.

Sincerely,

Rufus B. Howell, Chief
Division of Drinking Water
 and Environmental Management

Enclosures

cc:    (See Attached list.)

        Honorable Gene Mullin
        Member of the Assembly
        State Capitol, Room 2163
        Sacramento, California  95814

        Honorable Leland Yee
        Member of the Senate
        State Capitol, Room 4048
        Sacramento, California  95814

        Mr. Jerry Hill, President
        Board of Supervisors
        400 County Center, 1st Floor
        Redwood City, California  94063

        Ms. Tanya Yurovsky, P.E.
        Montara Water and Sanitary District
        Post Office Box 370131
        Montara, California  94037

        Mr. Scott Boyd, President, SAM Representative
        District Board of Directors
        Post Office Box 370131
        Montara, California  94037

Mr. George F. Irving
Page 4
September 28, 2007

Ms. Linda Ng, Chief
Safe Drinking Water Office, Room 816
Department of Water Resources
Post Office Box 942836
Sacramento, California  94236-0001

Ms. Vanessa Southward
Associate Analyst
Department of Water Resources

Mr. Eric Lacey, District Engineer
Santa Clara District
Division of Drinking Water and
   Environmental Management
California Department of Public Health
850 Marina Bay Parkway
Building P, Second Floor
Richmond, California  94804-6403

Ms. Catherine Ma, Regional Engineer
Division of Drinking Water and
   Environmental Management
California Department of Public Health
850 Marina Bay Parkway
Building P, Second Floor
Richmond, California  94804-6403

Mr. Stephen Woods, SDWSRF Program Manager
Division of Drinking Water and
   Environmental Management
California Department of Public Health
Post Office Box 997377
Sacramento, California  95899-7377

Ms. Lorri Silva
State Revolving Fund Program
Division of Drinking Water and
   Environmental Management
California Department of Public Health

Mike Zanolli
Environmental Unit
Division of Drinking Water and
   Environmental Management
California Department of Public Health

Mr. George F. Irving
Page 5
September 28, 2007

Ms. Nadine Feletto
Technical Support Unit
Division of Drinking Water and
  Environmental Management
California Department of Public Health

Mr. George F. Irving
Page 1
September 28, 2007

## MONTARA WATER AND SANITARY DISTRICT
### Project No. 4110010-024

## SAFE DRINKING WATER STATE REVOLVING FUND
### NOTICE OF ACCEPTANCE OF APPLICATION
### TERMS AND CONDITIONS

**Unless otherwise expressly directed herein, items indicated as DWR Requirements must be submitted to DWR at the address provided below, and CDPH Requirements must be submitted to your District Office of CDPH.**

Copies of all documents referenced below are enclosed. You are encouraged to share these documents with your legal and financial advisor(s) and governing body. Any concerns or comments should be directed to DWR.

**I.    Prior to issuance of the funding agreement for signature by your authorized representative, the following items must be provided:**

**DWR Requirements**

1.    A written designation, by resolution or as otherwise appropriate, of individual(s) with legal authority to:
    a.  Sign the SDWSRF funding agreement;
    b.  Approve the Claims for Reimbursement;
    c.  Sign the Budget and Expenditure Summary;
    d.  Sign the Final Release form; and
    e.  Sign the certification that the project is complete and ready for final inspection.

    Person(s) signing the Budget and Expenditure Summary and certification that the project is complete and ready for final inspection must be a registered engineer(s) or person(s) approved by CDPH.

2.    A written statement, resolution, or ordinance (as appropriate) adopted by the water system's governing body identifying a source of revenue and pledging/dedicating such source of revenue for repayment of the loan. When identifying the source of repayment, the identification should be as specific as possible, for example if using: assessments provide assessment name, date or number; user water rates, fees, or charges; CPUC authorized surcharge provide identity of CPUC order; or provide identity of accounts receivable as appropriate. The document shall also include a statement agreeing to increase rates as appropriate whenever necessary to satisfy debt service over the term of the loan.

Mr. George F. Irving
Page 2
September 28, 2007

You are encouraged to submit a draft of the statements, resolutions, or ordinances to DWR for review _prior_ to taking it to your board or governing body for adoption or approval. DWR will review the draft and recommend to you any required modifications, thus avoiding unnecessary delays in issuance of your funding agreement. A resolution that does not meet program requirements will not be accepted.

3.    Provide the identity of your Contract Manager.

4.    The Montara Water and Sanitary District shall provide documentation demonstrating that the Montara Water and Sanitary District has secured the remaining $296,400 in order to have a fully funded project.

      Note: You are encouraged to commence satisfaction of the above DWR Requirements immediately. Any concerns or comments should be directed to DWR.

### CDPH Requirements

1.    Montara Water and Sanitary District shall provide California Coastal Commission approval of the Coastal Permit to CDPH Environmental Review Unit (ERU) no later than December 15, 2007.

2.    Montara Water and Sanitary District shall provide US Fish and Wildlife Service comments regarding project impacts to endangered/threaten species to CDPH ERU no later than December 15, 2007.

3.    Montara Water and Sanitary District shall acquire ownership of the airport well sites and the associated water rights no later than December 31, 2007. Please note that property (including land and easements) obtained through condemnation proceedings are not eligible for SDWSRF funding.

4.    Montara Water and Sanitary District shall submit a permit amendment application, addressing the proposed project facilities, to CDPH Santa Clara Office no later than March 31, 2008.

5.    Montara Water and Sanitary District shall submit final plans and specifications with a detailed cost breakdown for the entire project (including non-SRF funded portions) to CDPH Santa Clara Office no later than March 31, 2008.

6.    Montara Water and Sanitary District shall provide documentation of conformance of land acquisition with the federal Uniform Relocation Assistance and Real Property Acquisition Act (Uniform Act) requirements to the Uniform Act coordinator at CDPH Sacramento Office, SRF Program no later than September 1, 2008. Please refer to the enclosed letter dated August 28, 2007, signed by Mr. Stephen Woods of CDPH.

Mr. George F. Irvino
Page 3
September 28, 2007

7.    Montara Water and Sanitary District shall submit documentation demonstrating
compliance with Labor Code Section 1771.8 (Information is available on the
Department of Industrial Relations website: http://www.dir.ca.gov/lcp.asp) to
CDPH SRF Program, Sacramento Office no later than May 1, 2008.

8.    Montara Water and Sanitary District shall have a Labor Compliance Program for
this project prior to construction bid solicitation. Appropriate provisions related to
the Labor Compliance Program shall be included in the construction bid.

All requirements under I must be satisfied before a funding agreement will be issued for
signature by your authorized representative, and all such requirements must be
satisfied within 1 year following the date of your signature of this "Montara Water and
Sanitary District, Project No. 4110010-024 SAFE DRINKING WATER STATE
REVOLVING FUND NOTICE OF ACCEPTANCE OF APPLICATION TERMS AND
CONDITIONS".

II.    Prior to final execution of the funding agreement by State, the following
items must be provided:

DWR Requirements

1.    The services of a Fiscal Agent must be secured to assist in administering
repayment of the loan. Complete and return to DWR a Fiscal Services
Agreement form, in triplicate with original signatures on all copies.

2.    Complete and sign a Payee Data Record (STD 204). This form is to be returned
with the signed funding agreement. DWR will forward it with the final funding
agreement to CDPH.

CDPH Requirements

1.    Montara Water and Sanitary District shall demonstrate to DWR that it has
provided additional security with a covenant to establish water enterprise rates
and charges in amounts sufficient to generate a net income equal to at least 1.2
times total annual water enterprise revenue debt service (General Obligation
debt, supported by property taxes, would be excluded from such calculation)
prior to final execution of the funding agreement with CDPH.

All items under II must be provided before final execution of the funding
agreement by State.

Mr. George F. Irvin
Page 4
September 28, 2007

Failure to comply with DWR and CDPH Requirements I and II may result in a
withdrawal of the Notice of Acceptance of Application. Should this occur, your project
will be bypassed but will remain on the project priority list. You may submit a new
application for future funding only after receiving another letter of invitation from CDPH.
If for any unforeseen reason you are unable to comply with any of the above
requirements, you should contact your District Office of CDPH as soon as possible.

**III.    Prior to disbursement of funds, the following items must be provided:**

<u>DWR Requirements</u>

1.    Evidence that a separate checking account or a separate ledger has been
established to account for funds received from the State.

Please indicate the name and address of the financial institution, exact name of
account holder, and the account name and number. If this checking account is
not used solely to account for funds received from the State, you must establish
a ledger within your accounting system in accordance with generally accepted
accounting principles. The ledger must identify the project number and SRF
funding agreement number. You must provide documentation showing that the
ledger has been established. **(Please note all accounts are subject to audit at
any time.)**

2.    Detailed account information where funds collected to repay the loan are held
before being transferred to your Fiscal Agent.

Please indicate the name and address of the financial institution, exact name of
account holder, and the account name and number. You must establish a ledger
within your accounting system in accordance with generally accepted accounting
principles to account for the receipt of funds collected to repay the loan. The
ledger must identify the project number and SRF funding agreement number.
You must provide documentation showing that the ledger has been established.
**(Please note all accounts are subject to audit at any time.)**

3.    Complete and return to DWR a Security Agreement (Deposit Account) form, on
the accounts in items 1 and 2 above. For account verification by the State,
please provide one of the following: a voided blank check, voided deposit slip, or
a copy of your most recent bank statement on this account.

4.    A Financing Statement (form UCC-1) will be completed and filed with the
Secretary of State of California by DWR. A copy of the form is enclosed. This
document is filed to provide security in items of personal property including the
accounts as referenced in items 1 and 2 above.

Mr. George F. Irving
Page 5
September 28, 2007

5.    Unless otherwise provided in the funding agreement, Montara Water and
Sanitary District is required to expend its share of project costs before State will
have any obligation to make disbursement.

CDPH Requirements

1.    The Montara Water and Sanitary District shall submit an initial budget of eligible
project costs approved by CDPH on a DWR Budget and Expenditure Summary
form.

All items under III must be provided before any disbursement of funds will be
made.

IV.    General Requirements

CDPH Requirements

1.    Montara Water and Sanitary District must complete all technical and
financial conditions of the Notice of Acceptance of Application including
this "Montara Water and Sanitary District, Project No. 4110010-024 SAFE
DRINKING WATER STATE REVOLVING FUND NOTICE OF ACCEPTANCE OF
APPLICATION TERMS AND CONDITIONS" within a time frame such that a
funding agreement can be issued within 1 year from the date you sign this
"Montara Water and Sanitary District, Project No. 4110010-024 SAFE DRINKING
WATER STATE REVOLVING FUND NOTICE OF ACCEPTANCE OF
APPLICATION TERMS AND CONDITIONS".

2.    Montara Water and Sanitary District shall implement all mitigation measures
identified in the Environmental Impact Report prepared for the project.

3.    Montara Water and Sanitary District shall submit the following construction
change orders to the CDPH Santa Clara District Office for approval prior to
issuance:

        a.    Changes that affect the treatment process.
        b.    Changes that would increase the capacity of any project component.
        c.    Any significant changes in the location of any project component.
        d.    Changes that affect the completion date of the project.

4.    Montara Water and Sanitary District shall complete construction of the project no
later than September 1, 2009.

Mr. George F. Irvin~
Page 6
September 28, 2007

5.  Subsequent to funding agreement execution you may request a **one-time** increase in funding. Such request must be **based upon competitive bids** and shall be submitted to the Santa Clara District Office of CDPH. Approval of your request may be granted or denied at the sole discretion of the State, subject to funding availability and your financial qualifications.

6.  Pursuant to Government Code Section 8546.7 the contracting parties shall be subject to the examination and audit of the State or any agent thereof, and the State Auditor. Parties are also subject to examination and audit of the U.S. Environmental Protection Agency, the Comptroller General of the United States, and Office of the Inspector General.

7.  Cross-cutting Federal Authorities apply to your project; see enclosed list. In order to conform to the federally mandated Minority and Women-owned Business Enterprise (MBE/WBE) good faith effort requirements you must include the appropriate MBE/WBE "good faith effort" provisions in any bid documents. (You must meet the "good faith effort" requirements even if you do not utilize a formal bid process.). Inclusion of the attached "Contract Provisions Relative to the Utilization of Minority Business Enterprise (MBE) and Women Business Enterprise (WBE)" and its attachments "MBEWBE Contractor Information Form" and "Minority Business Enterprise/Women/s Business Enterprise (MBE/WBE) Self Certification" satisfies these requirements.

    In order to demonstrate conformance with the federally mandated MBE/WBE good faith effort requirements, you must submit the construction bid solicitation package and the MBE/WBE good faith effort documentation from the construction contract award, to the CDPH-MBE/WBE coordinator.

The United States Environmental Protection Agency has established a good faith effort process to assure MBE/WBE have the opportunity to compete to participate in federally funded procurement. To comply with this requirement, you must:

- Perform the six affirmative steps required to meet the good faith effort on procurement of construction, equipment, supplies and services for this project. **(You will be required to demonstrate that you have complied with the six "good faith" steps.)**

- Report quarterly on or before January 15, April 15, July 15, and October 15 on the CDPH Quarterly Utilization Report, enclosed.

- Include language in all contracts and subcontracts requiring compliance with the above.

Mr. George F. Irvin
Page 7
September 28, 2007

Enclosed is a copy of the "California Department of Public Health Guidance to Public Water Systems on MBE/WBE Requirements for SRF Loans". Should you have any questions regarding MBE/WBE, please contact Nadine Feletto with CDPH at (916) 449-5621.

Under the Federal Drinking Water State Revolving Fund Guidelines, the District is required to comply with the Single Audit Act. This Act requires entities to conduct an audit in accordance with the Office of Management and Budget (OMB) Circular A-133 Act if the entity expends $500,000 or more in federal awards from any funding source, during the entity's fiscal year. A copy of the audit is to be submitted to CDPH. Information regarding the Single Audit Act can be found on the Internet at http://www.whitehouse.gov/omb/circulars/a133/a133.html.

Address for DWR:

> Department of Water Resources
> Safe Drinking Water Office
> Attention: Vanessa Southward
> 1416 Ninth Street, Room 816
> Post Office Box 942836
> Sacramento, California 94236-0001

The terms and conditions set forth in the Notice of Acceptance of Application dated September 28, 2007, including those set forth in this "Montara Water and Sanitary District, Project No. 4110010-024 SAFE DRINKING WATER STATE REVOLVING FUND NOTICE OF ACCEPTANCE OF APPLICATION TERMS AND CONDITIONS" are acceptable to the Montara Water And Sanitary District and it is Montara Water And Sanitary District's intent to continue with this project as proposed.

Signature: _____    Date: _10/5/07_

Print Name: _George F. Irving_

Title: _District Manager_

Address: _P.O. Box 370131_

_Montara, CA 94037_

**Subject: FAA Conflict with Local Water Needs**
**Date:** Thursday, August 16, 2007 1:28 PM
**From:** George Irving <msd@coastside.net>
**To:** <laurie_saroff@boxer.senate.gov>
**Conversation:** FAA Conflict with Local Water Needs

Laurie,

I got your email address from our legislative representative with the
Association of California Water Agencies (ACWA).  I am District Manager of
the Montara Water and Sanitary District located on the San Mateo County
coast about 15 miles south of San Francisco.  Our District serves a
population of about 5,500 and has a serious shortage of water and has a
water system in urgent need of major renovation.

We have been forced to condemn the three well sites and access
easements at the Half Moon Bay Airport which is owned by the County of
San Mateo.  These wells provide about 60 percent of our drinking water
and yet we only have what is called a license agreement to those well
sites.  It is not even a lease, but a very tentative arrangement by which we
can be expelled from the airport at any time for any reason.  Unfortunately
we are not in a position to find sufficient alternative water supplies within
the next few years.  The aquifer upon which the airport sits in the only
large such aquifer in the midcoast area that hydrologists are aware of.  In
addition, the District has been under a water moratorium since the
mid-1970's because the water we do have, even with the airport supply, is
not sufficient for the fire flow and drinking needs of this community.   This
makes the airport supply all the more vital.  We are looking for additional
supplies, but that takes years and can cost millions when the permitting
and environmental studies are included in the total cost.  We hope to start
esting of a new well near our Alta Vista Water Tank in the next several
nonths, but if it turns out to meet our expectations will still not give us
ufficient water to lift the moratorium.

'e also have a shortage in water storage.  We are about 1.2 million
ıllons short of current standards.  In order to rectify this we have
bmitted an application for a Department of Health Services low-interest
ın (2.5% for 20 years) to build one new 1 million gallon tank and replace

Page 1 of 4

an existing 1940s vintage 100,000 gallon tank with a new 200,000 gallon tank. In addition, we are being required by the State to upgrade our treatment of the water supply at the airport. This water is contaminated with nitrates, TCP, manganese and other contaminants. The State wants a centralized water treatment plant to address all of those items. We have also requested a State loan for that improvement.

The State recently advised us that they will not loan us money for either project if we do not own or have a long-term (20 years or more) lease on our well sites. This is because when upper management in the State reviewed our applications they said that it would be folly for them to loan money to an agency which has no control over 60% of its water supply—and therefore 60% of its revenue needed to repay the loans. Therefore, after about three years of attempting to negotiate some compromise with the County but getting no where we were forced to take formal action to condemn the property. By the way, this District and its predecessors have had water wells on the airport since about 1943 which was before the County received the airport land from the Federal government in 1947.

Our understanding of FAA requirements if that they must approve of the transfer of any land to local governments. There is a procedure established for this and it happens across the country. We can provide examples if you are interested since all such cases are noticed in the Federal Register. Our understanding is that the office in Washington DC charged with the final responsibility for such transfers is:

Charles Erhard, Manager
Airport Compliance
Office of Airport Safety and Standards
Federal Aviation Administration
Airport Compliance Division (AAS-400)
00 Independence Avenue SW
Washington DC 20591
Phone: 202-267-3085
X: 202-267-5257

would appreciate any assistance you could provide in facilitating our

UCS

1   JOSEPH P. RUSSONIELLO (CSBN 44332)
    United States Attorney
2   JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
3   CHARLES M. O'CONNOR (CSBN 56320)
    Assistant United States Attorney
4        450 Golden Gate Avenue, Box 36055
         San Francisco, CA 94102-3495                 FILED  Santa Clara Co
5        Tel: (415) 436-7180                          04/16/08    3:52pm
         Fax: (415) 436-6748                          Kiri Torre
6        E-mail: charles.oconnor@usdoj.gov            Chief Executive Offic
                                                      By: mrosales DISCIVU1
7   Attorneys for Intervenor, United States of America   R#2008000039356
                                                      EX              $320.00
8                                                     IL              $320.00
         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA  Case: 1-U-CCV-U88793
9                                                                  MR
         IN AND FOR THE COUNTY OF SANTA CLARA             M. Rosales
10

11  MONTARA WATER AND SANITARY        )   Case No. 1-07-CV-088793
    DISTRICT,                         )
12                                    )   UNITED STATES OF AMERICA'S
              Plaintiff,              )   NOTICE OF MOTION AND
13                                    )   MOTION FOR LEAVE TO
         v.                           )   INTERVENE IN PENDING ACTION
14                                    )   (CCP §§ 387(b), 1250.230)
    COUNTY OF SAN MATEO,              )
15                                    )   Date:   May 29, 2008
              Defendant.              )   Time:   9:00 a.m.
16                                    )   Place:  Dept. 5
                                      )
17  _____   )   Honorable Mary Jo Levinger

18  TO:    Montara Water and Sanitary District and its attorneys of record and to Defendant County

19         of San Mateo and its attorneys of record:

20         NOTICE IS HEREBY GIVEN that on May 29, 2008, at 9:00 a.m., or as soon thereafter

21  as the matter may be heard, in the Courtroom of the Honorable Mary Jo Levinger, Department 5

22  of this Court, located at the Santa Clara Superior Court, 191 N. 1st Street, San Jose, California,

23  the United States of America will, and hereby does, move the Court for an order granting it leave

24  to intervene by filing a complaint in intervention in this eminent domain action. The motion will

25  be made pursuant to Code of Civil Procedure sections 387(b) and 1250.230, on the grounds that

26  //

27
    1-07-CV-088793
28  U.S.A.' NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

                                                      EXHIBIT D

1 | the United States of America has interest in the real property which is the subject of action and

2 | an unconditional right to intervene, conferred by law.

3 |     The motion will be based on this notice of motion, the proposed complaint in

4 | intervention, the Declaration of Lorraine Herson-Jones and exhibits thereto, the memorandum of

5 | points and authorities in support of the motion, matters of which this Court can take judicial

6 | notice, all pleadings and papers on file in this action, and upon such other matters as may be

7 | presented to the Court at the time of the hearing on the motion.

8 | Dated: April 15, 2008

9 |

                Respectfully submitted,

10 |

                JOSEPH P. RUSSONIELLO
                United States Attorney

13 |                 CHARLES M. O'CONNOR
                Assistant United States Attorney

                Attorneys for The United States of America

1   JOSEPH P. RUSSONIELLO (CSBN 44332)
    United States Attorney
2   JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
3   CHARLES M. O'CONNOR (CSBN 56320)
    Assistant United States Attorney
4       450 Golden Gate Avenue, Box 36055
        San Francisco, CA 94102-3495
5       Tel: (415) 436-7180
        Fax: (415) 436-6748
6       E-mail: charles.oconnor@usdoj.gov

7   Attorneys for The United States of America

8

9               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              IN AND FOR THE COUNTY OF SANTA CLARA

11
    MONTARA WATER AND SANITARY    )
12  DISTRICT,                      )   Case No. 1-07-CV-088793
                                   )
13              Plaintiffs,        )
                                   )   DECLARATION OF
14  v.                             )   LORRAINE M. HERSON-JONES IN
                                   )   SUPPORT OF MOTION TO INTERVENE
15  COUNTY OF SAN MATEO,           )
                                   )
16              Defendants.        )
                                   )
17  ─────────────────────────────────

18          I, Lorraine Herson-Jones, declare that,

            1. I am an Attorney, Office of the Regional Counsel, Western-Pacific Region of the
19
    Federal Aviation Administration ("FAA"). My duties include providing legal advice to the
20
    Western-Pacific region, with the majority of my time dedicated to the Airports Division. I have
21
    held this same position for three and one-half years.
22
            2. I have reviewed the official and business records of the FAA regarding the transfer of
23
    the Half Moon Bay Airport property (the "Property") and have personal knowledge of the facts
24
    and circumstances of the above-captioned lawsuit and the reverter action taken by the FAA to
25
    //
26

27
    1-07-CV-088793
28  Declaration of Lorraine Herson-Jones in Support of Motion to Intervene

                        EXHIBIT E

1  regain title to the Property, and if called as a witness, I could and would testify competently to
2  those facts.

3       3. Under California Code of Civil Procedure § 387 and § 1250.230, the United States of
4  America ("United States") has applied to this Court for an order granting it leave to intervene in
5  this action and file the attached complaint in intervention, incorporated herein by reference. Trial
6  of this action has not yet begun, and I am informed and believe that no trial date has been set.

7       4. The United States of America conveyed the Property to Defendant County of San
8  Mateo ("Defendant" or "County") by quitclaim deed in 1947 "(the 1947 deed"), and retained a
9  reversionary fee interest in the Property that runs with the land, with an option to exercise the
10  interest upon the failure of the terms and conditions of the conveyance instrument. A true and
11  accurate copy of the 1947 deed, from the FAA's official records, is attached hereto as Exhibit 1.

12       5. The terms and conditions of the 1947 deed require that Defendant comply with certain
13  restrictions. Two of those restrictions provide: (1) that the Property remain a public airport, and
14  (2) that the Property can be transferred only with express approval from the FAA[1]. The 1947
15  deed also grants FAA a right of reverter if any restriction or condition is breached. See, Exhibit 1
16  at ¶¶ 5-6, 8.

17       6. On or about May 17, 2007 the Plaintiff Montara Water and Sanitary District
18  ("Plaintiff") filed an action in eminent domain against the Defendant.  Plaintiff action seeks to
19  condemn certain parcels of real property within the Property.

20       7. On or about December 13, 2007 Superior Court of Santa Clara granted Plaintiff early
21  possession of those parcels of Property ("subject parcels").

22       8. On December 21, 2007, FAA issued a Notice of Intent to Revert the Property to
23  Defendant and delivered copies of that Notice to both the Plaintiff and the Defendant. A true and
24  accurate copy of that Notice is attached hereto as Exhibit 2.

25  ─────────────────

26       [1]FAA is the successor in interest to WAA and assumes all of WAA rights and
responsibilities created in the quitclaim deed.
27

**1-07-CV-088793**
28  **Declaration of Lorraine Herson-Jones in Support of Motion to Intervene**          **- 2 -**

1    9. On March 21, 2008, FAA exercised its reversionary interest in the subject parcels by
2  filing a Notice of Reverter with the Recorder's Office, County of San Mateo, thus explicitly
3  exercising its reversionary rights by recording its legal interest in the subject parcels.  A true and
4  accurate copy of the Notice of Reverter is attached hereto as Exhibit 3.

5    10. From the time the Plaintiff filed its action and even before, the FAA has made
6  attempts to amicably resolve this dispute by clearly stating its objection to the Plaintiff's intended
7  condemnation, reminding the Plaintiff of the reversion clause, and proposing its agreement to a
8  long-term lease of the subject parcels to the parties as an alternative to the Plaintiff's purported
9  action to take the fee interest. When these efforts failed to resolve the matter and it became
10  unmistakably clear that attempts at compromise had not achieved cooperation, the FAA acted.  It
11  undertook the measures required to protect its legal interests by filing the Notice of Reverter and
12  thereafter, filing this motion for leave to intervene to protect its interest in the Property.

13    11. The United States, as the fee owner of the subject parcels, is a necessary party for the
14  proper disposition of this action, and its interest in the Property cannot be adequately represented
15  without its participation in the action.

16    12. The United States' position in this matter is in accord with the Defendant's position.

17    13. The United States has notified all other parties that this motion will be made by
18  certified mail – return receipt requested .

19         I declare under penalty of perjury under the laws of the State of California that
20         the foregoing is true and correct.  Signed this $\underline{15}$ day of April, 2008.

21

22                          _Lorraine M. Herson-Jones_
                           Lorraine M. Herson-Jones
23

24

25

26

27
    1-07-CV-088793
28  **Declaration of Lorraine Herson-Jones in Support of Motion to Intervene**                    - 3 -

# ATTACHMENT

1 | JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
2 | JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
3 | CHARLES M. O'CONNOR (CSBN 56320)
Assistant United States Attorney
4 |     450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
5 |     Tel: (415) 436-7180
Fax: (415) 436-6748
6 |     E-mail: charles.oconnor@usdoj.gov

7 | Attorneys for Intervenor United States of America

8

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9

**IN AND FOR THE COUNTY OF SANTA CLARA**

10

11 | MONTARA WATER AND SANITARY )
DISTRICT, )            Case No. 1-07-CV-088793
12 | )
      Plaintiff, )
13 | )
      v. )        **UNITED STATES OF AMERICA'S**
14 | )        **COMPLAINT IN INTERVENTION**
COUNTY OF SAN MATEO, )
15 | )
      Defendant. )
16 | )
_____ )
17 | )
THE UNITED STATES OF AMERICA, )
18 | )
      Intervenor. )
19 | _____ )

20 |     Intervenor, the United States of America, by leave of Court alleges:

21 |     1. On or about May 17, 2007, plaintiff Montara Water and Sanitary District ("Plaintiff"),

commenced this action against defendant San Mateo County ("Defendant") for condemnation of

22 | certain parcels of land at Half Moon Bay Airport ("the Property"). Trial of this action has not yet

23 | begun.

24 |     2. On [date], this Court granted the United States of America ("Intervenor" or "United

25 | States") leave to intervene in this action and to file this complaint in intervention.

26

27
Case No. 1-07-CV-088793
28 | UNITED STATES OF AMERICA's COMPLAINT IN INTERVENTION

1    3. In this action, the United States unites with the defendant, the County of San Mateo in
2    resisting the claims of the Plaintiff.

3    4. The United States intervenes in this action pursuant to Code of Civil Procedure
4    sections 1250.230 and 387(b) in that it has a legal interest in the real property at issue in this
5    eminent domain action and in the success of the Defendant in the action, as hereinafter set out
6    more particularly.

7    5. The United States, pursuant to the Surplus Property Act of 1944 (ch. 479, 58 Stat. 765),
8    conveyed the Property to Defendant by quitclaim deed in 1947, and retained a reversionary
9    interest in the property with an option to exercise that interest upon Defendant's failure to
10    comply with the terms, restrictions, and conditions of the deed.

11    6. Title 49 United States Code, Section 47152 grants the Federal Aviation Administration
12    ("FAA") sole responsibility for determining and enforcing compliance with the terms,
13    conditions, and restrictions of property conveyed under the Surplus Property Act.

14    7. On or about December 13, 2007, the Superior Court of Santa Clara granted Plaintiff
15    early possession of the Property.

16    8. On December 21, 2007, the United States issued to Defendant a Notice of Intent to
17    Revert the Property, indicating the impossibility of Defendant's compliance with the restriction
18    in the 1947 quitclaim deed that requires the approval of the United States, acting by and through
19    FAA, prior to the transfer of any portion of the Property.

20    9. The United States exercised its reversionary interest in the subject property by filing its
21    Notice of Reverter with the Recorder's Office, San Mateo County, on March 21, 2008 and thus,
22    it has a demonstrable interest in the Property.

23    WHEREFORE, intervenor demands judgment for:

24    1. An order authorizing the United States of America to intervene;

25    2. An order rescinding the award of an early possessory interest to Plaintiff;

26    //

27

28    Case No. 1-07-CV-088793
    UNITED STATES OF AMERICA's COMPLAINT IN INTERVENTION                    - 2 -

1    3. An order granting the United States of America its costs and fees of suit, herein

2    incurred; and,

3    4. An order granting such further relief as the Court may deem proper.

4    Dated: May___, 2008                     Respectfully submitted,

5

6                                            JOSEPH P. RUSSONIELLO
                                             United States Attorney
7

8

9                                            _____
                                             CHARLES M.O'CONNOR
10                                           Assistant United States Attorney

11                                                Attorneys for the United States of America

12   OF COUNSEL:

13
     LORRAINE HERSON-JONES
14   Attorney
     Federal Aviation Administration
15

16

17

18

19

20

21

22

23

24

25

26

27   Case No. 1-07-CV-088793
28   UNITED STATES OF AMERICA's COMPLAINT IN INTERVENTION                    - 3 -

1    JOSEPH P. RUSSONIELLO (CSBN 44332)
     United States Attorney
2    JOANN M. SWANSON (CSBN 88143)
     Chief, Civil Division
3    CHARLES M. O'CONNOR (CSBN 56320)
     Assistant United States Attorney
4        450 Golden Gate Avenue, Box 36055
         San Francisco, CA 94102-3495
5        Tel: (415) 436-7180
         Fax: (415) 436-6748
6        E-mail: charles.oconnor@usdoj.gov

7    Attorneys for Intervenor United States of America

8                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      IN AND FOR THE COUNTY OF SANTA CLARA

10

11   MONTARA WATER AND SANITARY          )
     DISTRICT,                           )    Case No. 1-07-CV-088793
12                                       )
            Plaintiff,                   )
13                                       )
            v.                           )    UNITED STATES OF AMERICA'S
14                                       )    COMPLAINT IN INTERVENTION
     COUNTY OF SAN MATEO,                )
15                                       )
            Defendant.                   )
16   _____)
                                         )
17   THE UNITED STATES OF AMERICA,       )
                                         )
18          Intervenor.                  )
     _____)

19
          Intervenor, the United States of America, by leave of Court alleges:
20
          1.  On or about May 17, 2007, plaintiff Montara Water and Sanitary District ("Plaintiff"),
21
     commenced this action against defendant San Mateo County ("Defendant") for condemnation of
22
     certain parcels of land at Half Moon Bay Airport ("the Property"). Trial of this action has not yet
23
     begun.
24
          2.  On [date], this Court granted the United States of America ("Intervenor" or "United
25
     States") leave to intervene in this action and to file this complaint in intervention.
26

27   Case No. 1-07-CV-088793                              **EXHIBIT F**
28   UNITED STATES OF AMERICA's COMPLAINT IN INTERVENTION

1     3. In this action, the United States unites with the defendant, the County of San Mateo in

2     resisting the claims of the Plaintiff.

3     4. The United States intervenes in this action pursuant to Code of Civil Procedure

4     sections 1250.230 and 387(b) in that it has a legal interest in the real property at issue in this

5     eminent domain action and in the success of the Defendant in the action, as hereinafter set out

6     more particularly.

7     5. The United States, pursuant to the Surplus Property Act of 1944 (ch. 479, 58 Stat. 765),

8     conveyed the Property to Defendant by quitclaim deed in 1947, and retained a reversionary

9     interest in the property with an option to exercise that interest upon Defendant's failure to

10     comply with the terms, restrictions, and conditions of the deed.

11     6. Title 49 United States Code, Section 47152 grants the Federal Aviation Administration

12     ("FAA") sole responsibility for determining and enforcing compliance with the terms,

13     conditions, and restrictions of property conveyed under the Surplus Property Act.

14     7. On or about December 13, 2007, the Superior Court of Santa Clara granted Plaintiff

15     early possession of the Property.

16     8. On December 21, 2007, the United States issued to Defendant a Notice of Intent to

17     Revert the Property, indicating the impossibility of Defendant's compliance with the restriction

18     in the 1947 quitclaim deed that requires the approval of the United States, acting by and through

19     FAA, prior to the transfer of any portion of the Property.

20     9. The United States exercised its reversionary interest in the subject property by filing its

21     Notice of Reverter with the Recorder's Office, San Mateo County, on March 21, 2008 and thus,

22     it has a demonstrable interest in the Property.

23     WHEREFORE, intervenor demands judgment for:

24     1. An order authorizing the United States of America to intervene;

25     2. An order rescinding the award of an early possessory interest to Plaintiff;

26     //

27

28     Case No. 1-07-CV-088793

1    3. An order granting the United States of America its costs and fees of suit, herein

2    incurred; and,

3    4. An order granting such further relief as the Court may deem proper.

4    Dated: May__, 2008                         Respectfully submitted,

5

6                                              JOSEPH P. RUSSONIELLO
                                               United States Attorney
7

8

9                                              _____
                                               CHARLES M.O'CONNOR
10                                             Assistant United States Attorney

11                                                  Attorneys for the United States of America

12   OF COUNSEL:

13   LORRAINE HERSON-JONES

14   Attorney

15   Federal Aviation Administration

16

17

18

19

20

21

22

23

24

25

26

27   Case No. 1-07-CV-088793
28   UNITED STATES OF AMERICA's COMPLAINT IN INTERVENTION                              - 3 -

1 | JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
2 | JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
3 | CHARLES M. O'CONNOR (CSBN 56320)
Assistant United States Attorney
4 | 450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
5 | Tel: (415) 436-7180
Fax: (415) 436-6748
6 | E-mail: charles.oconnor@usdoj.gov

7 | Attorneys for Intervenor United States of America

8

9 | **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SANTA CLARA**

10

11 | MONTARA WATER AND SANITARY )     Case No. 1-07-CV-088793
DISTRICT, )
12 | )
     Plaintiff, )     **ORDER GRANTING**
13 | )     **LEAVE TO INTERVENE**
v. )
14 | )     Date:   May 29, 2008
COUNTY OF SAN MATEO, et al., )     Time:   9:00 a.m.
15 | )     Place:   Dept. 5
     Defendant. )
16 | _____ )     Honorable Mary Jo Levinger

17 | The United States of America's motion for leave to intervene in this action was regularly

18 | heard at the above date and time. Appearing as attorneys were: Herman H. Fitzgerald on behalf

19 | of the plaintiff; David A. Levy, Deputy County Counsel, on behalf of the defendant; and, Charles

20 | M. O'Connor, Assistant United States Attorney, on behalf of the intervenor.

21 | The Court having considered the documents submitted in support of and in opposition to

22 | the proposed intervention and the arguments of counsel, and good cause appearing,

23 | IT IS ORDERED that The United States of America be granted leave to intervene in this

24 | action and to file its complaint in intervention.

25 | Date: May__, 2008

26 | _____
     Judge, Superior Court, Santa Clara County
27
1-07-CV-088793
28 | Order Granting Leave to Intervene

**EXHIBIT G**