JOSEPH P. RUSSONIELLO (SBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
CHARLES M. O'CONNOR (SBN 56320)
Assistant United States Attorney

    450 Golden Gate Avenue, 9th Floor
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7180
    Facsimile:   (415) 436-6748
    Email:       charles.oconnor@usdoj.gov

Attorneys for Intervenor United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Montara Water and Sanitary District,<br><br>                  Plaintiff,<br><br>   v.<br><br>COUNTY OF SAN MATEO, a political subdivision of the State of California; and DOES 1 to 20, inclusive,<br><br>                  Defendants.<br><br>UNITED STATES OF AMERICA,<br><br>                  Intervenor. | No. C 08-2814 JF (RS)<br><br><br><br>LORRAINE M. HERSON-JONES IN SUPPORT OF INTERVENOR'S OPPOSITION TO REMAND<br><br>Date:   September 19, 2008<br>Time:  9:00 a.m.<br>Ctrm:  Hon. Jeremy Fogel |

      I, Lorraine Herson-Jones, declare that,

      1.  I am an Attorney, Office of the Regional Counsel, Western-Pacific Region of the Federal Aviation Administration ("FAA").  My duties include providing legal advice to the Western-Pacific region, with the majority of my time dedicated to the Airports Division.  I have held this same position for over three and one-half years.

      2.  I have reviewed the official and business records of the FAA regarding the transfer of the Half Moon Bay Airport property (the "Property") and have personal knowledge of the facts and circumstances of the above-captioned lawsuit and the reverter action taken by the FAA to

//

1  regain title to the Property, and if called as a witness, I could and would testify competently to
2  those facts.
3      3. Earlier in 2008, the FAA exercised its reversionary interest in the parcels which are
4  subject of the above-captioned case by issuing a Notice of Reverter.  The FAA filed its Notice of
5  Reverter with the Recorder's Office, County of San Mateo, thereby explicitly exercising its
6  reversionary rights by recording its legal interest in the subject parcels.
7      4. Subsequently, the FAA ordered and obtained a title report from First American Title
8  Company for the subject real property.   A true and accurate copy of that title report is attached
9  hereto as Exhibit 1.
10     5. The title report confirms that "Title to the estate or interest in the Land is vested in:
11 UNITED STATES OF AMERICA and COUNTY OF SAN MATEO, A POLITICAL
12 SUBDIVISION OF THE STATE OF CALIFORNIA."  See Exhibit 1, at Page Number: 2,
13 Paragraph 5.
14     I declare under penalty of perjury under the laws of the State of California that  the
15     foregoing is true and correct.   Signed at Lawndale, CA this 21st day of August, 2008.
16
17                              /s/
                     Lorraine M. Herson-Jones
18
19
20
21
22
23
24
25
26
27
28



# First American Title Company
1386 Leadhill Blvd., Suite 100
Roseville, CA 95661

August 01, 2008

GRETCHEN KELLY
SAN FRANCISCO AIRPORTS DISTRICT OFFICE
831 MITTEN ROAD, SUITE 210
BURLINGAME, CA 94010
Fax:    (650)876-2733


Title Officer:          JIM PROTHERO
Phone:                  650-569-2518

Order Number:           3401-3109342 ()


Property:               9850 CABRILLO HWY
                        HALF MOON BAY, CA 94037

Attached please find the following item(s):

Guarantee

Thank You for your confidence and support.  We at First American Title Company maintain the fundamental principle:

## Customer First!


EXHIBIT 1

First American Title Company

Form No. 1 (12/16/92)                                                                Order Number: **3401-3109342**

CLTA Litigation Guarantee                                                            Page Number:  1

# LITIGATION GUARANTEE

SUBJECT TO THE LIMITATIONS CONTAINED HEREIN, THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE.

**First American Title Insurance Company**
a California corporation, herein called the Company

GUARANTEES

The Assured named in Schedule A against loss not exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, as of Date of Guarantee shown in Schedule A:

1. The title to the herein described estate or interest is vested in the vestee named in Schedule A.
2. Except for the matters shown in Schedule B, there are no defects, liens, encumbrances or other matters affecting title to the estate or interest in the land shown in Schedule A, which matters are not necessarily shown in the order of their priority.
3. a)  The current interest holders claiming some right, title or interest by reason of the matters shown in Part Two of Schedule B are as shown therein.  The vestee named in Schedule A and parties claiming to have some right, title or interest by reason of the matters shown in Part Two of Schedule B may be necessary parties defendant in an action, the nature of which is referred to in Schedule A.
   b)  The current interest holders claiming some right, title or interest by reason of the matters shown in Part One of Schedule B may also be necessary parties defendant in an action, the nature of which is referred to in Schedule A.  However, no assurance is given hereby as to those current interest holders.
4. The return addresses for mailing after recording, if any, as shown on each and every document referred to in Part Two of Schedule B by specific recording information, and as shown on the document(s) vesting title as shown in Schedule A are as shown in Schedule C.

THIS LITIGATION GUARANTEE IS FURNISHED SOLELY FOR THE PURPOSE OF FACILITATING THE FILING OF THE ACTION REFERRED TO IN SCHEDULE A.  IT SHALL NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.

*First American Title Insurance Company*

BY  *[signature]*  PRESIDENT

ATTEST  *[signature]*  SECRETARY

[Seal: First American Title Insurance Company, Incorporated September 24, 1968, California]

*First American Title Company*

Form No. 1 (12/16/92)                                                                 Order Number: **3401-3109342**

CLTA Litigation Guarantee                                           Page Number: 2

## SCHEDULE A

Liability: $1,000.00                                                                            Fee: $360.00

1. Name of Assured:

   SAN FRANCISCO AIRPORTS DISTRICT OFFICE

2. Date of Guarantee:

   July 07, 2008 at 7:30 A.M.

3. This Litigation Guarantee is furnished solely for the purpose of facilitating the filing of an action to:

   OWNERSHIP VERIFICATION

4. The estate or interest in the Land which is covered by this Guarantee is:

   A fee.

5. Title to the estate or interest in the Land is vested in:

   UNITED STATES OF AMERICA and COUNTY OF SAN MATEO, A POLITICAL SUBDIVISION OF THE STATE OF CALIFORNIA

6. The Land referred to in this Guarantee is described as follows:

   Real property in the unincorporated area, County of SAN MATEO, State of CALIFORNIA, described as follows:

   PARCEL I:

   BEGINNING AT A POINT IN THE SOUTHEASTERLY LINE OF MARINE VIEW TERRACE TRACT, WHICH BEARS NORTH 29° 19' EAST 1110.54 FEET AND NORTH 43° 00' WEST 1579.39 FEET FROM THE MOST EASTERLY CORNER OF LOT 1, BLOCK 26 OF THE RIVIERA OCEAN VILLA TRACT, AS PER MAP THEREOF FILED FOR RECORD IN BOOK 6 OF MAPS AT PAGE 20, RECORDS OF SAN MATEO COUNTY, CALIFORNIA; THENCE NORTH 28° 42' 45" EAST 1100 FEET, MORE OR LESS, TO THE SOUTHWESTERLY LINE OF CALIFORNIA STATE HIGHWAY BETWEEN MIRAMAR AND FARALLONE CITY, IV-SM-56-C.D.; THENCE IN A GENERAL SOUTHEASTERLY DIRECTION, FOLLOWING THE MEANDER OF THE SOUTHWESTERLY LINE OF SAID STATE HIGHWAY, 4287 FEET, MORE OR LESS, TO A 1 INCH IRON PIPE, WHICH IS AT THE MOST NORTHERLY CORNER OF PORTION OF FRANCISCO HEIGHTS, "MAP OF FRANCISCO HEIGHTS NEAR HALF MOON BAY" FILED MARCH 3, 1908 IN BOOK 6 OF MAPS AT PAGES 5 AND 6; THENCE CONTINUING ALONG THE SOUTHWESTERLY LINE OF THE HIGHWAY 1125 FEET, MORE OR LESS, TO A POINT ON THE SOUTHEASTERLY LINE OF FRANCISCO HEIGHTS SUBDIVISION; THENCE CONTINUING SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID STATE HIGHWAY AND ALONG

*First American Title Company*

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 3

THE SOUTHWESTERLY LINE OF THE COUNTY ROAD TO PRINCETON, 2650 FEET, MORE OR LESS, TO A POINT ON THE NORTHEASTERLY BOUNDARY OF THE 33.90 ACRE TRACT FORMERLY OF DANERI FROM WHICH THE MOST NORTHERLY CORNER OF SAID TRACT BEARS NORTH 71° 00' WEST 965 FEET, MORE OR LESS, THENCE SOUTH 71° EAST 100 FEET, MORE OR LESS, TO A POINT IN THE CENTER OF THE DENNISTON CREEK, FROM WHICH A WITNESS POST MARKED AV BEARS NORTH 71° WEST, DISTANT 19.80 FEET; THENCE DOWN SAID CREEK IN THE CENTER OF THE SAME AND FOLLOWING THE MEANDERINGS THEREOF AS FOLLOWS: SOUTH 18° WEST 104.28 FEET; THENCE SOUTH 14° 45' EAST 132 FEET; THENCE SOUTH 43° 89.10 FEET; THENCE SOUTH 8° WEST 165.0 FEET; THENCE SOUTH 31° 30' WEST 72.60 FEET; THENCE SOUTH 66 FEET; THENCE SOUTH 13° EAST 88.44 FEET; THENCE SOUTH 23° EAST 75.90 FEET; THENCE LEAVING THE CENTERLINE OF SAID CREEK SOUTH 85° 30' EAST 26.40 FEET TO A POINT FROM WHICH A WITNESS POST MARKED AXIII BEARS NORTH 27° 30' EAST, A DISTANCE OF 24.42 FEET; THENCE SOUTH 50° EAST 51.48 FEET TO A POINT FROM WHICH WITNESS POST MARKED AXII BEARS NORTH 27° 30" EAST, DISTANT 24.42 FEET; THENCE SOUTH 11° 30' EAST 419.76 FEET; THENCE NORTH 27° 30' EAST 24.92 FEET TO A FENCE CORNER POST MARKED AXI; THENCE SOUTH 25° 30' EAST 87.02 FEET TO A POST MARKED AX, STANDING IN LINE OF FENCE ON THE WESTERLY SIDE OF THE TRACT OF LAND BELONGING TO PATRICK MCMAHON; THENCE NORTH 71° WEST 1598.23 FEET TO A POINT, FROM WHICH POST MARKED AVII BEARS NORTH 71° WEST 100.61 FEET; THENCE NORTH 47° EAST 64.93 FEET; THENCE NORTH 43° 00' WEST 5889.74 FEET TO A POINT FROM WHICH THE MOST EASTERLY CORNER OF LOT 1 IN BLOCK 26 OF RIVIERA OCEAN VILLA TRACT AS PER MAP THEREOF FILED IN BOOK 6 OF MAPS AT PAGE 20 BEARS SOUTH 29° 19' WEST 1766.54 FEET; THENCE NORTH 43° 00 WEST 1193.27 FEET; THENCE SOUTH 47° 00' WEST 625.0 FEET; THENCE NORTH 43° 00' WEST 186.85 FEET TO THE POINT OF BEGINNING.

PARCEL II:

A PORTION OF THE RANCHO CORRAL DE TIERRA (PALOMARES) AND A PORTION OF FRANCISCO HEIGHTS AS THE SAME IS SHOWN ON THAT CERTAIN MAP ENTITLED, "MAP OF FRANCISCO HEIGHTS NEAR HALF MOON BAY, SAN MATEO, SAN MATEO COUNTY, CALIFORNIA, FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON MARCH 23, 1908 IN BOOK 6 OF MAPS AT PAGES 5 AND 6, DESCRIBED AS A WHOLE AS FOLLOWS:

COMMENCING AT THE POINT OF INTERSECTION OF THE REFERENCE LINE OF THE DEPARTMENT OF PUBLIC WORKS OF THE STATE OF CALIFORNIA SURVEY FOR THE FLIGHT STRIP IN SAN MATEO COUNTY PROJECT IV-SM-HALF MOON BAY, F.S. 4-A.F.A.-4 WITH THE NORTHWESTERLY BOUNDARY OF PRINCETON BY THE SEA AS THE SAME IS SHOWN ON THAT CERTAIN MAP ENTITLED, "MAP OF PRINCETON-BY-THE-SEA, HALF MOON BAY, SAN MATEO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON SEPTEMBER 8, 1908 IN BOOK 6 OF MAPS AT PAGE 32, SAID POINT BEING ENGINEERS STATION 15+31.75 OF SAID SURVEY AND DISTANT SOUTH 25° 28' 15" WEST 202.14 FEET FROM A POST MARKED AVII AT THE MOST NORTHERLY CORNER OF SAID MAP OF PRINCETON-BY-THE-SEA; THENCE FROM SAID POINT OF COMMENCEMENT ALONG SAID NORTHWESTERLY LINE OF PRINCETON-BY-THE-SEA, SOUTH 25° 28' 25" WEST 349.38 FEET TO A LINE PARALLEL WITH AND DISTANT SOUTHWESTERLY 32.5 FEET MEASURED AT RIGHT ANGLES FROM SAID REFERENCE LINE; THENCE ALONG SAID PARALLEL LINE NORTH 43° 00' WEST 7196 FEET; THENCE NORTH 47° 00' EAST 625 FEET TO A LINE PARALLEL WITH AND DISTANT 300 FEET NORTHEASTERLY MEASURED AT RIGHT ANGLES FROM THE REFERENCE LINE OF SAID SURVEY; THENCE ALONG SAID PARALLEL LINE SOUTH 43° 00' EAST 7083.01 FEET; THENCE SOUTH 47° WEST 64.93 FEET TO THE NORTHERLY BOUNDARY OF SAID PRINCETON-BY-THE-SEA; THENCE ALONG SAID NORTHERLY LINE NORTH 70° 51' 45" WEST 100.61 FEET TO A POST MARKED AVII SET AT THE MOST NORTHERLY CORNER SAID

Form No. 1 (12/16/92)  
CLTA Litigation Guarantee

Order Number: **3401-3109342**  
Page Number: 4

SUBDIVISION; THENCE ALONG THE NORTHWESTERLY BOUNDARY OF SAID SUBDIVISION SOUTH 25° 28' 15" WEST 202.14 FEET TO THE POINT OF BEGINNING.

PARCEL III:

ALL THAT PARCEL OF LAND LYING 20 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED LINE:

COMMENCING AT A POINT ON THE WESTERLY LINE OF PRINCETON-BY-THE-SEA AS SAID LINE IS SHOWN UPON THAT CERTAIN MAP ENTITLED, "PRINCETON-BY-THE-SEA, HALF MOON BAY, SAN MATEO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON SEPTEMBER 8, 1908 IN BOOK 6 OF MAPS AT PAGE 32, WHICH SAID POINT IS DISTANT 573.02 FEET FROM A POST MARKED AVII AS SHOWN ON SAID MAP; THENCE FROM SAID POINT OF COMMENCEMENT NORTH 43° 00' WEST 7388.37 FEET TO A POINT ON THE EASTERLY LINE OF THAT CERTAIN SUBDIVISION ENTITLED, "RESUBDIVISION OF MARINE VIEW TERRACE TRACT, SAN MATEO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON OCTOBER 30, 1907 IN BOOK 5 OF MAPS AT PAGE 39, WHICH SAID POINT IS DISTANT NORTH 28° 43' 45" EAST 59.88 FEET FROM THE MOST SOUTHERLY CORNER OF LOT 11 IN BLOCK 25 OF SAID SUBDIVISION.

THE SAID LINES OF SAID STRIP OF LAND TO BE PROLONGED OR SHORTENED AS TO INTEREST WITH THE SOUTHEASTERLY LINE OF SAID MARINE VIEW TERRACE TRACT AT THE NORTHWESTERLY TERMINATION OF SAID STRIP AND WITH THE NORTHWESTERLY LINE OF PRINCETON-BY-THE-SEA AT THE SOUTHEASTERLY TERMINATION OF SAID STRIP.

APN: 037-292-030

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 5

## SCHEDULE B

Defects, liens, encumbrances or other matters affecting title:

## PART ONE

1. General and special taxes and assessments for the fiscal year 2008-2009, a lien not yet due or payable.

2. The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

3. Rights of the public in and to that portion of the land lying within THE AREA COMMONLY KNOWN AS CAPISTRANO ROAD AND AIRPORT STREET.

4. An easement for COMMUNICATIONS CABLE and incidental purposes, recorded JUNE 24, 1942 as INSTRUMENT NO. 56634-E IN BOOK 1025, PAGE 170 of Official Records.
   In Favor of: UNITED STATES COAST GUARD
   Affects: A PORTION OF THE LAND

5. An easement for ALL RIPARIAL, APPROPRIATIVE AND PRESCRIPTIVE RIGHTS and incidental purposes, recorded APRIL 15, 1943 as INSTRUMENT NO. 79129-E IN BOOK 1059, PAGE 117 of Official Records.
   In Favor of: RIVIERA LAND COMPANY
   Affects: A PORTION OF THE LAND

6. An easement for ALL RIPARIAN, APPROPROVATIVE, PRESCRIPTIVE AND OTHER RIGHTS TO THE WATERS OF SAN VICENTE CREEK and incidental purposes, recorded APRIL 15, 1943 as INSTRUMENT NO. 79130-E IN BOOK 1056, PAGE 307 of Official Records.
   In Favor of: RIVIERA LAND COMPANY
   Affects: A PORTION OF THE LAND

7. Covenants, conditions, restrictions and easements in the document recorded MAY 25, 1948 as INSTRUMENT NO. 32951-H IN BOOK 1521, PAGE 1 of Official Records, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, marital status, ancestry, disability, handicap, familial status, national origin or source of income (as defined in California Government Code §12955(p)), to the extent such covenants, conditions or restrictions violate 42 U.S.C. § 3604(c) or California Govenment Code §12955 . Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 6

8. An easement for WATER PIPE LINE and incidental purposes, recorded MAY 25, 1948 as INSTRUMENT NO. 32951-H IN BOOK 1521, PAGE 1 of Official Records.
   In Favor of:       UNITED STATES OF AMERICA
   Affects:           10 FOOT STRIP OF THE LAND

9. An easement for PUBLIC ROADS/HIGHWAYS, EXISTING EASEMENTS FOR PUBLIC UTILITIES, RAILROADS AND PIPELINES and incidental purposes, recorded FEBRUARY 3, 1949 as INSTRUMENT NO. 74828-H IN BOOK 1620, PAGE 414 of Official Records.
   In Favor of:       UNITED STATES OF AMERICA
   Affects:           60 FOOT STRIP OF THE LAND

10. Covenants, conditions, restrictions and easements in the document recorded JANUARY 18, 1957 as INSTRUMENT NO. 20746-P IN BOOK 3161, PAGE 534 of Official Records, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, marital status, ancestry, disability, handicap, familial status, national origin or source of income (as defined in California Government Code §12955(p)), to the extent such covenants, conditions or restrictions violate 42 U.S.C. § 3604(c) or California Govenment Code §12955 . Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

11. An easement for WATER LINES PURPOSES and incidental purposes, recorded MARCH 10, 1964 as INSTRUMENT NO. 24824-Y IN BOOK 4909, PAGE 389 of Official Records.
    In Favor of:      CITIZENS UTILITIES COMPANY OF CALIFORNIA, ITS SUCCESSORS AND/OR ASSIGNS
    Affects:          10 FOOT STRIP OF THE LAND

12. The terms and provisions contained in the document entitled RESOLUTION NO. 50749 - RESOLUTION ESTABLISHING SAN MATEO COUNTY SERVICE AREA NO. 12 (MONTARA-MOSS BEACH) FOR WATER SERVICES AND ESTABLISHING THE AFFECTED AREA recorded SEPTEMBER 26, 1988 as INSTRUMENT NO. 88128897 of Official Records.

13. Any claim that any portion of the land is or was formerly tidelands and submerged lands within the bed of any tidal slough or creek.

14. Rights of parties in possession.

*First American Title Company*

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 7

# PART TWO

1. Notice of pendency of action recorded JUNE 6, 2007 as INSTRUMENT NO. 2007-087093 of Official Records.

   | | |
   |---|---|
   | Court: | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SAN MATEO CIVIL UNLIMITED JURISDICTION |
   | Case No.: | CIV 463068 |
   | Plaintiff: | MONTARA WATER AND SANITARY DISTRICT, A PUBLIC BODY |
   | Defendant: | COUNTY OF SAN MATEO, A POLITICAL SUBDIVISION OF THE STATE OF CALIFORNIA; AND DOES 1 TO 20, INCLUSIVE |
   | Purpose: | CONDEMNATION |

2. Any statutory lien for labor or materials arising by reason of a work of improvement, as disclosed by a notice of completion recorded AUGUST 8, 2007 as INSTRUMENT NO. 2007-119804 of Official Records, which reflects a completion date of JULY 26, 2007.

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number:  8

# SCHEDULE C

ADDRESSES

| Paragraph Number: | Recording Information: | Mailing Address: |
|---|---|---|
| 5, SCHEDULE A | JANUARY 18, 1957 IN BOOK 3161, PAGE 531 | BOARD OF SUPERVISORS COUNTY OF SAN MATEO |
| 1, SCHEDULE B, PART 2 | JUNE 6, 2007 AS INSTRUMENT NO. 2007-87093 | CHRISTINE C. FITZGERALD, ESQ. LAW OFFICES OF HERMAN H. FITZGERALD 345 LORTON AVE. SUITE 302 BURLINGAME, CA 94010 |
| 2, SCHEDULE B, PART 2 | AUGUST 8, 2007 AS INSTRUMENT NO. 2007-119804 | SUSAN DURLING PONY NO. DPW155 |

*First American Title Company*

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 9

## SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1. Except to the extent that specific assurance are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:
(a) Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.
(b) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.
(c) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.
2. Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:
(a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A), (C) or in Part 2 of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps, or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.
(b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1) which are created, suffered, assumed or agreed to by one or more of the Assureds; (2) which result in no loss to the Assured; or (3) which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.
(c) The identity of any party shown or referred to in Schedule A.
(d) The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

## GUARANTEE CONDITIONS AND STIPULATIONS

**1. Definition of Terms.**
The following terms when used in the Guarantee mean:
(a) the "Assured": the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.
(b) "land": the land described or referred to in Schedule (A) (C) or in Part 2, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A) (C) or in Part 2, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
(c) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
(d) "public records" : records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
(e) "date": the effective date.
**2. Notice of Claim to be Given by Assured Claimant.**
An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the manner or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.
**3. No Duty to Defend or Prosecute.**
The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.
**4. Company's Option to Defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.**
Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
(a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
(b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.
(c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.
(d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such Assured for this purpose. Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.
**5. Proof of Loss Damage.**

*First American Title Company*

| | |
|---|---|
| Form No. 1 (12/16/92) | Order Number: **3401-3109342** |
| CLTA Litigation Guarantee | Page Number: 10 |

In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to such Assured under the Guarantee shall terminate. In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss damage. All information designated as confidential by the Assured provided to the Company, pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information of grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

**6. Options to Pay or Otherwise Settle Claims: Termination of Liability.**
In case of a claim under this Guarantee, the Company shall have the following additional options:
(a) To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.
The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by said mortgage or said lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.
Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price. Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.
(b) To Pay Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.
To pay or otherwise settle with other parties for or in the name of an Assured claimant any claim Assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.
Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4.

**7. Determination and Extent of Liability.**
This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the Exclusions From Coverage of This Guarantee.
The Liability of the Company under this Guarantee to the Assured shall not exceed the least of:
(a) the amount of liability stated in Schedule A or in Part 2;
(b) the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage Assured against by this Guarantee occurs, together with interest thereon; or
(c) the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance Assured against by this Guarantee.

**8. Limitation of Liability.**
(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter Assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
(b) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.
(c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

**9. Reduction of Liability or Termination of Liability.**
All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

**10. Payment of Loss.**
(a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

**11. Subrogation Upon Payment or Settlement.**
Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.
The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

*First American Title Company*

Form No. 1 (12/16/92)

CLTA Litigation Guarantee

Order Number: **3401-3109342**

Page Number: 11

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

**12. Arbitration.**
Unless prohibited by applicable law, either the Company or the Assured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision or other obligation. All arbitrable matters when the Amount of Liability is $1,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. The Rules in effect at Date of Guarantee shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permits a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
A copy of the Rules may be obtained from the Company upon request.

**13. Liability Limited to This Guarantee; Guarantee Entire Contract.**
(a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
(b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
(c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, and Assistant Secretary, or validating officer or authorized signatory of the Company.

**14. Notices, Where Sent.**
All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at 2 First American Way, Bldg 2, Santa Ana, California, 92707.

*First American Title Company*